IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CIVIL ACTION NO.: 2:05-1115 |
| | ) | CRIMINAL NO.: 2:03-92 |
| vs. | ) | |
| | ) | |
| MICHAEL GRASSO | ) | |

This matter is before this court pursuant to Michael Grasso's ("Petitioner") Motion Pursuant to 28 U.S.C. § 2255.

## FACTS

Grasso was one of thirteen co-defendants involved in an eleven count Superseding Indictment, in which Grasso is named in Counts One, Five, Six , and Seven. Petitioner and his co-defendants participated in an extensive drug distribution conspiracy that began in 2001, ended in the summer of 2003, and involved the purchase and sale of ketamine, cocaine, marijuana, ecstasy, and methamphetamine.

Grasso's participation in this conspiracy began when he met Bobby Ryder in May of 2001. Ryder purchased bottles of ketamine in Mexico and distributed them in the Charleston area. Petitioner began purchasing bottles of ketamine from Ryder, and resold them in local clubs from May 2001 to April 2002. During this same period of time, Grasso met co-defendants Larry Caulder, Daniel Cavey, and George David Carr who were also engaged in the distribution of narcotics. The four men became good friends and later became partners in drug distribution. In March 2002, Grasso and Cavey were arrested for selling ecstasy and being in possession of ketamine and methamphetamine. In April 2002, Grasso, Calder, and

1

Cavey moved into a house together. Angel Rodriguez soon became a frequent visitor to Grasso's home. Petitioner began to help Rodriguez distribute his cocaine and ecstasy. In June 2002, Grasso became a partner in Rodriguez's drug distribution business. Rodriguez supplied the drugs and Grasso distributed them. Rodriguez and Grasso and their co-conspirators traveled to New York and Miami to buy drugs and then smuggled them back into South Carolina where the drugs were re-cut and sold.

On June 26, 2002, agents of the Horry County Police Department conducted a controlled buy from Grasso and Angel Rodriguez wherein an undercover officer and a confidential informant met with Grasso and Rodriguez and agreed to buy $6,300 of cocaine. Following the sale, Grasso and Rodriguez left the residence and got in their car, and were immediately arrested.

On October 23, 2002, the Charleston County Sheriff's Office Metro Narcotics Unit made a controlled purchase of 100 ecstasy pills from Thomas Harkleroad. Petitioner was present at the transaction and was observed handing Harkleroad a plastic bag of ecstasy pills and a plastic bag containing marijuana. Following the sale, agents moved in. Petitioner fled on foot but the police caught him at a nearby Lowe's parking lot. Police then obtained a search warrant for the Holiday Inn Express room petitioner was using. Police found approximately seven pounds of marijuana in Grasso's room.

## **PRODEDURAL HISTORY**

On April 9, 2003, Grasso was indicted by the federal grand jury for violations of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D), and Section 846. On July 9, 2003, the federal grand jury returned a superseding indictment as to

Grasso and his co-defendants.

On October 30, 2003, Grasso pleaded guilty to the Superseding Indictment. On January 28, 2004, the United States Probation Office filed a motion to revoke Grasso's bond, and an arrest warrant was signed by the undersigned. On February 11, 2004, petitioner was arrested and held in detention pending sentencing.

On May 4, 2004, Grasso was sentenced to 180 months for Counts One, Five, and Six, and a concurrent 120 months as to Count Seven.

On April 15, 2005, Petitioner filed the instant motion pursuant to Title 28, United States Code, Section 2255.

## ANALYSIS

Petitioner raises two claims in support of the instant motion. First, Grasso claims that his lawyer, Assistant Federal Public Defender Bob Haley, was ineffective because he failed to object to sentencing enhancements under United States Sentencing Guideline § 3B1.1(a), § 3C1.1, and § 2D1.1(b)(1). Petitioner contends that Mr. Haley was aware of the Supreme Court's decision in *Blakely v. Washington,* --- U.S. ---, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), yet failed to argue the holdings of that case or request a stay until the outcome was final. Secondly, Grasso claims that the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to his case because it was clearly established law at the time of his sentencing.

### Ineffective Assistance of Counsel

Petitioner's first claim is that Mr. Haley rendered ineffective assistance of counsel. Petitioner points out that Mr. Haley knew *Blakely* was pending before the Supreme Court

3

and that a decision in that case could effect petitioner's case, therefore, counsel was ineffective for not arguing *Blakely* or requesting a stay until the case was decided.

In order to establish ineffectiveness of counsel, Grasso bears the burden of establishing the following two factors: 1) that counsel's performance fell below an objective professional standard of reasonableness; and 2) that counsel's deficiencies prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-92 (1984). Under the first factor of the *Strickland* test, this Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 680. Moreover, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..." *Id.* at 689. *See also, Mathews v. Evatt,* 105 F.3d 907, 918-21 (4th Cir. 1997); *Fields v. Attorney General of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir.), *cert. denied,* 506 U.S. 885 (1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir.), *cert. denied,* 474 U.S. 865 (1985); and *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983), *cert. denied*, 464 U.S. 1065 (1984). As the *Strickland* court observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court examining counsel's defense after it has proved unsuccessful, to conclude that a particular act of omission of counsel was reasonable...[E]very effort [must] be made to eliminate the distorting effects of hindsight...
> *Id.* at 689.

For the second factor, Grasso "must show there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Both the Supreme Court and the Fourth Circuit have held that a defendant bears the burden of proving prejudice, *Fields*, 956 F.2d at 1297, and if a defendant cannot meet

4

this burden, then the first factor of *Strickland*, the performance factor, need not be considered. *Id.* at 1297. *See also, Strickland*, 466 U.S. at 697, and *Hutchins*, 724 F.2d at 1430-31.

Petitioner's claim that Mr. Haley rendered ineffective counsel fails because Grasso cannot satisfy the first factor of the *Strickland* test, that his counsel's alleged failures fell below an objective professional standard of reasonableness. *See Strickland*, 466 U.S. at 689. Petitioner claims that *U.S. v. Booker,* 543 U.S. ___ (2005), was a foregone conclusion due to the decisions of *Apprendi* and *Blakely*. *Apprendi*, however, did not guarantee the outcome in *Booker. See Simpsons v. United States,* 376 F.3d 679, 681 (7th Cir. 2004) (court cited twelve courts of appeals to support the idea that before the Blakely decision, "every federal court of appeals had held that *Apprendi* did not apply to guideline calculations made within the statutory maximum"). Moreover, the court in *Blakely* explicitly did not decide that its holding applied to the Federal Sentencing Guidelines. *Blakely,* 124 S.Ct. at 2538 . Thus, it was not at all certain that the *Apprendi* and *Blakely* decisions would lead to the *Booker* decision.

Additionally, petitioner does not claim, nor has he ever claimed that he desires a trial on the charges contained in indictment 03-92.  By taking this position, Grasso  cannot establish the "prejudice" prong of the analysis required by the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  In cases where a defendant pleads guilty, the Supreme Court has stated "...in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial", Hill v. Lockhart,

5

474 U. S. 52, 59 (1985). Petitioner has not and does not insist on going to trial; therefore, he fails to carry his burden as to either prong of the Strickland test.

Further, the facts of Grasso's case support the application of the following three enhancements: 1) § 3B1.1(a) [leader of a criminal activity]; 2) § 3C1.1 [obstruction of justice]; and 3) § 2D1.1(b)(1) [possession of a firearm].

### 3B1.1(a) Enhancement

The facts indicate that petitioner well deserved the first enhancement under 3B1.1(a) as a leader of a criminal activity.[1] Those involved in the conspiracy, as well as Grasso himself, admitted that he was a "partner" in the business with Rodriguez, and a key player in the distribution side of the drug conspiracy. The Fourth Circuit has repeatedly held that the 3B1.1(a) enhancement applies. *See U.S. v. Coles*, 71 Fed.Appx 212, 2003 WL 21760646 (4th Cir. 2003)(enhancements applied when witnesses testify to defendant's leading role in distribution of cocaine); *U.S. v. Kuzon*, 48 Fed.Appx. 877, 2002 WL 31261579 (4th Cir. 2002)(enhancement applicable when participants noted that defendant directed their activities which demonstrated defendant's leadership role).

### 3C1.1 Enhancement

The facts clearly show that Grasso deserved a § 3C1.1 enhancement for obstruction of

---

[1]Section 3B1.1(a) states as follows:
> If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

USSG §3B1.1(a) (November 1993)

justice.[2] After his bond hearing, petitioner contacted co-defendants against the magistrate judge's orders, asking some of the co-defendants to lie when they spoke to law enforcement officers. Despite being reprimanded by the magistrate judge Grasso again contacted several co-defendants. Additionally, petitioner used illegal narcotics while awaiting sentencing. The Fourth Circuit and other courts have repeatedly held that the obstruction of justice enhancement applies. See *U.S. v. Washington*, 68 Fed.Appx. 407, 2003 WL 21380385 (4th Cir. 2003)(enhancement applicable when considering testimony from credible witness concerning obstruction of justice acts); *U.S. v. Sarinas,* 2005 WL 1331241 (5th Cir. 2005) (unpublished) (enhancement applicable when defendant influenced an individual detained by law enforcement to lie).

## 2D1.1(b)(1) Enhancement

The facts show that petitioner also deserves the enhancement under § 2D1.1(b)(1) for possession of a weapon.[3] A co-defendant stated that Grasso brought a weapon with him when

---

[2] Section 3C1.1 states as follows:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1 (Nov. 2004).

[3] Section 2D1.1(b)(1) states as follows:
> If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

USSG § 2D1.1(b)(1) (Nov. 2004)

transporting drugs from New York. The Fourth Circuit and other courts have repeatedly held that possessing a dangerous weapon in connection with a drug offense applies. *U.S. v. Shider*, 122 Fed.Appx. 1, 2004 WL 2791622 (4th Cir. 2004)(unpublished)(Enhancement applicable because it was not clearly improbable that the weapon was connected to the offense.); *U.S. v. Valladares-Helguera,* 78 Fed.Appx. 232, 2003 WL 22351299 (4th Cir. 2003)(unpublished)(held enhancement applicable when co-conspirators support evidence that defendant carried a concealed weapon when distributing drugs); *U.S. v. Wallace*, 103 Fed. Appx. 736, 2004 WL 1682899 (4th Cir. 2004)(unpublished) (Enhancement held applicable because evidence supported enhancement).

Because Grasso has not shown that these objections to his sentence would have had merit, he has not shown a "reasonable probability" that the outcome of the proceeding would have been different but for any alleged failure by his attorney. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Hence, Petitioner's claim of ineffective assistance of counsel for failure to object to the aforementioned sentencing enhancements must fail.

## BOOKER CLAIM

In Booker, the Supreme Court reaffirmed its holding from Apprendi v. New Jersey, 530 U.S. 466 (2000), stating "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756.  In so doing, the Court explicitly found the Federal Sentencing Guidelines subject to its holding and subsequently excised the provisions within the guidelines themselves that made their application mandatory.  As a result,

defendants whose cases were still on direct review became eligible for re-sentencing under the new regime.

Petitioner's conviction, however, became final on May 14, 2004, before the Court's decision in <u>Booker</u> on January 12, 2005; therefore, in raising his challenge, petitioner is necessarily asking this court to apply <u>Booker</u>'s holding to his case retroactively. Existing law does not permit such an application.

### Analysis

The determination of whether to apply any particular rule of law retroactively involves multiple steps. First, the court must determine whether the rule of law is a substantive rule or a procedural rule because new substantive rules generally apply retroactively while new procedural rules generally do not apply retroactively. <u>Schriro v. Summerlin</u>, 124 S. Ct. 2519, 2522-2523 (2004). Second, if the rule is procedural, the court must then determine whether it is a "new" rule. <u>See</u> <u>Beard v. Banks</u>, 124 S. Ct. 2504, 2510 (2004). If it is a new procedural rule, then the court must further determine whether it is a "watershed" rule. <u>See id.</u> If the rule of law is either a substantive criminal law or a new watershed rule of criminal procedure, then it must be applied retroactively. All others will not be applied retroactively.

### Substantive or Procedural

"A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." <u>Schriro</u>, 124 S. Ct. at 2523 (citing <u>Bousley v. United States</u>, 523 U.S. 614, 620-621 (1998) and <u>Saffle v. Parks</u>, 494 U.S. 484, 495 (1990)). By

9

contrast, "rules that regulate only the manner of determining the defendant's culpability are procedural." Id.

The holdings of Apprendi and Booker do not address the scope of conduct prohibited by the criminal law, nor do they speak to the class of persons affected by that law. Instead, the high Court rulings realign the method of determining what conduct has occurred (and the threshold of proof applicable in that determination) with the mandates of the United States Constitution. As the Seventh Circuit put it, "No conduct that was forbidden before Booker is permitted today . . . ." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005). The change effected is that judges are no longer bound by sentences prescribed by the Guidelines based on facts they have found by a preponderance of the evidence. In returning judicial discretion to a sentencing scheme based on statutory minimums and maximums, in re-allocating the duties of essential fact-finding to the juries, and in re-affirming the standard of proof attached to that fact-finding, the Supreme Court fine-tuned the machinery that carries out the interdiction of the criminal law, the process. Consequently, the rule announced in Booker is procedural.

## New or Then-Existing

Because Booker's edict is procedural, the court operates against the background that it would not generally be applied retroactively, but in the foreground that there are nearly always exceptions in the law. In order for a criminal procedural rule to be applied retroactively, it must be "new" and it must be a "watershed rule." See Beard, 124 S. Ct. at 2510. A new rule is one that "breaks new ground or imposes a new obligation on the States or the Federal Government." Teague v. Lane, 489 U.S. 288, 301 (1989). Said another way,

the court must "assay the legal landscape as of [the date petitioner's judgment became final] and ask 'whether the rule later announced in [Booker] was dictated by then-existing precedent– whether, that is, the unlawfulness of [petitioner's] conviction was apparent to all reasonable jurists." Beard, 124 S. Ct. at 2511 (citing Lambrix v. Singletary, 520 U.S. 518, 527-528 (1997)).

As the Sixth Circuit recognized in Humphress v. United States, 398 F.3d 855 (6th Cir. 2005), "[t]he Booker rule is clearly new." Id. at 861. Apprendi did not mandate the outcome in Booker. See Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004) (observing that "before Blakely was decided, every federal court of appeals had held that Apprendi did not apply to guideline calculations made within the statutory maximum" and citing cases from twelve courts of appeals). It is also plain that reasonable jurists could disagree about whether Blakely v. Washington, 124 S. Ct. 2531 (2004), mandated the outcome in Booker. First, Blakely expressly reserved opinion on whether it applied to the Federal Sentencing Guidelines. Blakely, 124 S. Ct. at 2538 n.9. Second, Booker was decided over a four-justice dissent. See Booker, 125 S. Ct. at 802 (Breyer, J., dissenting). Third, there was deep division in the federal judiciary over whether Blakely made Booker inevitable. See Humphress, 398 F.3d at 861-862 (discussing the circuit split that occurred between the time Blakely was decided and the time Booker was decided). All of these factors inform the court's decision that Booker indeed announced a new rule of criminal procedure.

## **Watershed or Something Less**

11

A new rule of criminal procedure is of the "watershed" variety if it "implicat[es] the fundamental fairness and accuracy of the criminal proceeding." Saffle, 494 U.S. at 495 (citing Teague, 489 U.S. at 311 (plurality opinion)). "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.'" Schriro, 124 S. Ct. at 2523 (citing Teague, 489 U.S. at 313.)) Furthermore, the Supreme Court has "repeatedly emphasized the limited scope of [this] exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty." Beard, 124 S. Ct. at 2513 (citing O'Dell v. Netherland, 521 U.S. 151, 157 (1997). In fact, a qualifying rule would have to be "'so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge . . . .'" Id. (citing Graham v. Collins, 506 U.S. 461, 478 (1993). And for that reason, "it should come as no surprise that [the Supreme Court has] yet to find a new rule that falls under [this] exception." Id. at 2513-2514.

Booker is not destined to be the first new rule of criminal procedure to qualify under the watershed exception. As the Tenth Circuit observed, the holdings from Blakely (and now Booker) "do[] not affect the determination of a defendant's guilt or innocence. Rather, [they address] only how a court imposes a sentence, once a defendant has been convicted." United States v. Price, 400 F.3d 844, 848 (10th Cir. 2005). Similarly, the Seventh Circuit has commented that:

> Booker does not in the end move any decision from judge to jury, or
> change the burden of persuasion. The remedial portion of Booker held that
> decisions about sentencing factors will continue to be made by judges, on

12

> the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application.

McReynolds, 397 F.3d at 481.  As the Supreme Court reasoned in Schriro:

> The right to jury trial is fundamental to our system of criminal procedure, and States are bound to enforce the Sixth Amendment's guarantees as we interpret them.  But it does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart.

Schriro, 124 S. Ct. at 2526.  While the Schriro Court was considering whether the rule making it unconstitutional for judges to find aggravating factors authorizing the death penalty was a watershed decision, most courts have found its reasoning persuasive in the present context.  See Humphress, 398 F.3d at 863 (finding "Schriro's reasoning applies with equal force to Booker"); McReynolds, 397 F.3d at 480 (finding Schriro is "all but conclusive" on the retroactivity of Booker); see also Varela, 400 F.3d at 868 (relying on Schriro and McReynolds for the same holding).  This court, too, finds Schriro persuasive, as well as the courts of appeals that have addressed the issue so far.  For those reasons, the court finds that Booker did not announce a watershed rule and cannot therefore be applied retroactively.[4]

## Conclusion

---

[4] The court notes that all five federal courts of appeals that have addressed the issue so far have found that the rule from Booker is not retroactive.  Guzman v. United States, Docket No. 03-2446-pr, 2005 U.S. App. LEXIS 5700 (2d. Cir. Apr. 8, 2005); United States v. Price, 400 F.3d 844 (10th Cir. March 8, 2005); Humphress v. United States, 398 F.3d 855 (6th Cir. Feb. 25, 2005); Varela v. United States, 400 F.3d 864 (11th Cir. Feb. 17, 2005); McReynolds v. United States, 397 F.3d 479 (7th Cir. Feb. 13, 2005).

For all of the foregoing reasons, the court finds that Booker does not apply retroactively to criminal judgments that became final before its release on January 12, 2005.[5]  Petitioner's conviction became final on May 14, 2004, before the January 12, 2005 decision, and is therefore not subject to the rule announced in Booker.

THEREFORE, petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

**AND IT IS SO ORDERED**.

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

CHARLESTON, S.C.
July 26, 2005

---

[5] The Fourth Circuit recognized, in United States v Hammond, 381 F.3d 316, 345 (4th Cir. 2004), that the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), did not itself invalidate the Federal Sentencing Guidelines; therefore, Booker's issue date rather than Blakely's date marks the dawning of a new rule and, consequently, the appropriate cut-off point for cases on direct review. See also Guzman, 2005 U.S. App. LEXIS 5700, at *3 (holding same); McReynolds, 397 F.3d at 481 (holding same).